# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIQING WANG, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, <br><br> Defendants. | Case No. 1:16-cv-01963 (TNM) |

## MEMORANDUM OPINION

Plaintiff Siqing Wang invested $500,000 in a U.S. business to qualify for an investor visa, but the United States Citizenship and Immigration Services ("USCIS") declared her ineligible. The central issue was—and is still—whether proceeds from a loan are either "cash" or "indebtedness" under the regulation. Both USCIS and Ms. Wang filed motions for summary judgment. After a motions hearing, the Court finds that USCIS's interpretation of its own regulation is plainly erroneous because it conflicts with the language of the regulation and is unsupported by the regulation's history and USCIS's own precedent. So the Plaintiff's motion will be granted in part, and the Defendants' motion will be denied.

## I. BACKGROUND

Ms. Wang is a Chinese graduate student who wishes to become a permanent resident of the United States. CAR 207. She invested $500,000 in a U.S. business because she believed that this investment would make her eligible for permanent residency under 8 U.S.C. § 1153(b)(5). *See* CAR 4-7. The $500,000 came from proceeds of a loan secured by property that Ms. Wang alleges that she owned jointly with her father. CAR 375-79, 395-411. Ms. Wang then invested

$500,000 in a commercial enterprise designed to finance the renovation of the Jung Hotel, a historical hotel in New Orleans, Louisiana. CAR 562, 574.

Next, Ms. Wang filed an I-526 visa petition. CAR 4-6. In October 2015, USCIS approved the petition, concluding that she satisfied the requirements for an EB–5 immigrant investor visa. CAR 1257. But two months later, USCIS issued her a Notice of Intent to Revoke. CAR 1258-62. Upon further review, USCIS classified Ms. Wang's EB–5 investment as "indebtedness" and determined that Ms. Wang failed "to establish that she has an ownership interest in the asset used to secure the loan that is equal to the minimum capital investment of $500,000." CAR 1262. So it suggested that she had not invested enough capital to satisfy Section 1153(b)(5). *Id.*

Responding to the Notice, Ms. Wang clarified that her father had given her his share of the loan proceeds. CAR 1264-65. Ms. Wang argued that because her interest in the property used to secure the loan was worth more than her own half of the loan proceeds, it was "sufficient to secure her share" of the loan. CAR 1265. USCIS was unconvinced. CAR 1283-88. Again, USCIS categorized Ms. Wang's $500,000 as indebtedness under 8 C.F.R. § 204.6(e) because the money was from a loan. CAR 1287. And USCIS explained that it could not consider Ms. Wang's father's signed statement—explaining that he had given Ms. Wang his share of the loan proceeds—because it would amount to a material change in the evidence. *Id.* Ms. Wang filed an administrative motion to reopen or reconsider, and USCIS denied it. CAR 1349-55.

Ms. Wang then filed this suit, challenging both the denial of her visa petition and the denial of her motion to reconsider or reopen. *Wang v. USCIS*, 306 F. Supp. 3d 1, 2 (D.D.C. 2018). Defendants USCIS; Jeh Johnson, then-Secretary of the Department of Homeland Security; Leon Rodriguez, then-Director of USCIS; and Julia Harrison, Acting Chief of the

Immigrant Investor Program, filed a joint motion to dismiss for lack of subject matter of jurisdiction and for failure to state a claim. *Id.* The Court determined that it had jurisdiction to review the agency's decision because it was characterized as a denial—not a revocation—and thus subject to judicial review despite 8 U.S.C. § 1252(a)(2)(B)(ii). *Id.* at 6. But the Court did grant the Defendants' motion in part insofar as Ms. Wang was challenging the denial of her motion to reconsider or reopen because she had failed to state such a claim. *Id.* at 8-9.

## II.     LEGAL STANDARDS

Summary judgment is usually only appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56. But when a court is reviewing an administrative agency's decision, the standard set out in Federal Civil Procedure Rule 56 does not apply. *Richards v. I.N.S.*, 554 F.2d 1173, 1177 (D.C. Cir. 1977). Instead, as both parties acknowledge, courts review an agency's decision under the deferential standard provided in the Administrative Procedure Act. *See Ramaprakash v. Fed. Aviation Admin.*, 346 F.3d 1121, 1124 (D.C. Cir. 2003). Courts set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

"Although the scope of review under this standard is narrow, courts must consider 'whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors.'" *Chang v. USCIS* 289 F. Supp. 3d 177, 182 (D.D.C. 2018) (quoting *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995)).

# III.     ANALYSIS

To qualify for an immigrant visa under the EB–5 Program, an applicant must invest a qualifying amount of "capital" in a new U.S. business. *See* 8 U.S.C. § 1153(b)(5).[1] Ordinarily, an EB–5 visa applicant must invest $1 million, *id.* § 1153(b)(5)(C)(i), but only $500,000 is required if the investment is "in a targeted employment area," *id.* § 1153(b)(5)(C)(ii); 8 C.F.R. § 204.6(f)(2). Here, both parties agree that Ms. Wang's investment was in a targeted employment area. The statute does not define "capital," but the regulation does. 8 C.F.R. 204.6(e) provides that

> Capital means cash, equipment, inventory, other tangible property, cash equivalents, and indebtedness secured by assets owned by the alien entrepreneur, provided that the alien entrepreneur is personally and primarily liable and that the assets of the new commercial enterprise upon which the petition is based are not used to secure any of the indebtedness.

8 C.F.R. 204.6(e).[2] So capital in the form of indebtedness is subject to a collateralization requirement. *Id.* The regulation also makes clear that assets acquired unlawfully do not qualify as "capital." *Id.*

## A. The Agency's Action was Arbitrary and Capricious

According to USCIS, its longstanding interpretation of the regulatory definition of "capital" dictates that loan proceeds are "indebtedness" and not "cash." Defs.' Mem. at 13, ECF

---

[1] "In visa petition proceedings, the burden of proof to establish eligibility sought for the benefit conferred by the immigration laws rests upon the petitioner." *Matter of Brantigan*, 11 I. & N. Dec. 493, 495 (BIA 1966).

[2] The Court agrees with USCIS that the precise contours of "capital" in 8 U.S.C. § 1153(b)(5) are ambiguous, and it was proper for USCIS to promulgate its regulation through notice-and-comment rulemaking.

No. 26-1.³ USCIS insists that loan proceeds—as "indebtedness"—only qualify as capital if the petitioner meets the collateralization requirement. *Id.* Namely, the "indebtedness" must be secured by collateral owned by the petitioner, and the petitioner must be "personally and primarily liable" for the "indebtedness." *Id.* As USCIS sees it, Ms. Wang fails the collateralization requirement because she does not "personally and primarily" own the property used to secure the loan.

In defending its action, USCIS repeatedly invokes a claim to deference. *See, e.g.*, Def.'s Mem. at 2 ("USCIS's interpretation of its regulation is . . . entitled to high deference."); Def.'s Reply at 9, ECF No. 30 ("The agency's choice among permissible constructions, therefore, is entitled to deference."). But to what should the Court to defer? At the motions hearing, USCIS implied that the Court should defer to remarks made during USCIS's April 22, 2015 telephonic meeting with EB–5 stakeholders. Transcript of Motions Hearing ("Tr.") at 4. Then USCIS clarified and urged the Court to defer to its precedential decision, *Matter of Soffici*, 22 I. & N. Dec. 158 (BIA 1998). *Id.* at 5. But as USCIS conceded, "*Soffici* is not directly on point." *Id.* at 8. In that case, the petitioner claimed that the loan that his new commercial enterprise obtained directly from a bank qualified as his own investment of capital. *Soffici*, 22 I. & N. Dec. at 162. The agency held that the commercial enterprise's loan was not "an investment of the *petitioner's* personal capital." *Id.* (emphasis in original). USCIS argues that *Soffici* controls because Ms. Wang's father, a third-party like the commercial enterprise in that case, obtained the loan at issue.

---

³ Throughout its briefing, USCIS calls its decision a "revocation" despite this Court's express holding and the face of the USCIS's decision itself. *See Wang*, 306 F. Supp. 3d at 6. As this issue has already been settled, the Court will not revisit it.

Not so. First, *Soffici* says nothing about how loan proceeds should be classified: either as "indebtedness" or "cash." And unlike the petitioner in *Soffici*, Ms. Wang is not indebted to the new commercial enterprise but to a third-party lender. In *Soffici*, the commercial enterprise itself bore the risk of loss, but here, the enterprise received only cash and no risk of loss. *Soffici* does not dictate—or even support—USCIS's action here.[4]

Likewise, the Court rejects USCIS's invitation to defer to USCIS's decision denying Ms. Wang's petition. The decision does not "reflect the agency's fair and considered judgment on the matter." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (cleaned up). Nowhere in its decision does USCIS seriously grapple with Ms. Wang's argument that her investment was "cash," not "indebtedness." And as USCIS reminds the Court in re-urging the revocation issue, USCIS itself has been far from consistent in characterizing its own action.

So what is left? Only USCIS's briefing. Courts defer to an agency's interpretation of its own ambiguous regulation, even when only advanced in a legal brief.[5] *See Chase Bank USA v. McCoy*, 562 U.S. 195, 210 (2011). But "this general rule does not apply in all cases." *Christopher*, 567 U.S. at 154. Deference is unwarranted when an agency's interpretation is merely a "convenient litigation position" or a "*post hoc* rationalization" put forward to justify past agency action. *Id.* at 155 (cleaned up). Indeed, "Congress has delegated to the

---

[4] The Court will not defer to USCIS's reading of *Soffici* for reasons discussed above. As Judge Bates has recently explained, "[i]t is one thing to defer to an agency's interpretation of a statute it enforces, and another to defer to the agency's precedential opinion that interprets its own regulation, which in turn interprets the statute. But it cannot be deference all the way down, lest the courts abdicate their constitutional role. An interpretation of an interpretation of an interpretation must rest on its own bottom." *Chang*, 289 F. Supp. 3d at 186 n.10.

[5] At least for now. *See Kisor v. Wilkie*, No. 18-15, 2018 WL 6439837 (U.S. Dec. 10, 2018) (Mem.) (granting certiorari on whether the Supreme Court should overrule its precedents about deference to administrative agencies).

administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands." *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988) (internal quotation omitted). The Court will not defer to USCIS's briefing because it "appears to be nothing more than an agency's convenient litigating position." *See id.* at 213.

That is the case here. First, as discussed, USCIS's own decision does not engage with Ms. Wang's argument that her investment was "cash," not "indebtedness." USCIS's binding precedent, at the very least, offers a different interpretation of "indebtedness." *See Matter of Hsiung*, 22 I. & N. Dec. 201, 202 (BIA 1998) ("A promissory note can constitute 'capital' under 8 C.F.R. § 204.6(e) if the note is secured by assets owned by the petitioner."). What's more, Ms. Wang has put forward evidence that USCIS's position here reflects an abrupt break from its longstanding interpretation of "capital."[6]

So when substantial deference is not warranted, courts give "a measure of deference proportional to the 'thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *Christopher*, 567 U.S. at 159 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001)).

USCIS is certainly right that the regulation's definition of capital includes both "cash" and "indebtedness." But contrary to USCIS's protestations, proceeds from a loan are not "indebtedness." Indebtedness refers to the condition of *owing* money—not the proceeds that a

---

[6] In April 2015, USCIS's Immigrant Investor Program Office released remarks stating that invested loan proceeds "may qualify as capital used for EB-5 investments, provided that the requirements placed upon indebtedness by 8 C.F.R. § 204.6(e) are satisfied." *See* USCIS, Immigrant Investor Program Office, EB-5 Telephonic Stakeholder Engagement: IPO Deputy Chief's Remarks (Apr. 22, 2015), available at https://www.uscis.gov/sites/default/files/USCIS/Outreach/PED_IPO_Deputy_Chief_Julia_Harrisons_Remarks.pdf.

debtor secures when he acquires a debt. *See* 7 Oxford English Dictionary 838 (2d ed. 1989) (defining *indebtedness* as "[t]he condition of being indebted or in debt"). In the context of 8 C.F.R. § 204.6(e), an investor invests "indebtedness" when the investor is in the condition of being indebted to the new commercial enterprise. "[I]indebtedness is an asset of value because the investor is obligated to make payments to the enterprise at a later date." *Zhang v. USCIS*, 344 F. Supp. 3d 32, 51 (D.D.C. 2018).[7]

Simply put, indebtedness is a promise to pay the new commercial enterprise later rather than the immediate payment of cash. USCIS's own binding precedent fits this interpretation of "indebtedness." *See Matter of Hsiung*, 22 I. & N. Dec. 201, 202 (BIA 1998) ("A promissory note can constitute 'capital' under 8 C.F.R. § 204.6(e) if the note is secured by assets owned by the petitioner."). In fact, one of USCIS's own policy memoranda treats "indebtedness" as synonymous with an "immigrant investor's promise to pay." *See* USCIS, *EB-5 Adjudications Policy* (PM-602-0083) (May 30, 2013), available at https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/ 2013/May/EB-5_Adjudications_PM_Approved_as_final_5-30-13.pdf.

The collateralization requirement for "indebtedness" makes sense because there is a risk that no actual assets would be infused into the local economy by the foreign investor, frustrating the intent of the EB–5 visa program. By contrast, a security interest is unnecessary for cash because the commercial enterprise can "readily deploy" it. *See Zhang*, 344 F. Supp. 3d at 51.

---

[7] In *Zhang*, Judge Sullivan held that USCIS's policy of classifying loan proceeds as "indebtedness" rather than "cash" under 8 C.F.R. § 204.6(e)'s definition of "capital" was arbitrary and capricious and granted the plaintiffs' motion for class certification. 344 F. Supp. 3d at 40. Because the Government has filed a Notice of Appeal in that case, *see* "Notice of Action," ECF No. 36, the Court will not wait to rule on Ms. Wang's case until it can be determined whether she would fall within the *Zhang* class.

Cash—even if obtained from a loan—is still cash. "It is fixed law that words of statutes or regulations must be given their 'ordinary, contemporary, common meaning.'" *FTC v. Tarriff*, 584 F.3d 1088, 1090 (D.C. Cir. 2009) (quoting *Williams v. Taylor*, 529 U.S. 420, 431 (2000)). To identify something as "cash" says nothing of its source. "Cash" means ready money. *See* 2 Oxford English Dictionary 938 (defining *cash* as "money; in the form of coin, ready money"). To be sure, the dictionary definition of a term is not dispositive, but it is relevant.

The history of this regulation undermines USCIS's argument to the contrary. The regulation at first excluded "all types of intangible property, cash equivalents, and debt financing arrangements" from the definition of "capital." *See* 56 Fed. Reg. 60,902. But then the agency broadened the definition to include "cash equivalents" and "indebtedness." *Id.* According to the agency, it "expanded the definition of capital" to effectuate Congress's intent that the definition be broad and because most commentators thought that excluding debt from the definition of capital would "ignore modern business practice." *Id.* That is, the term "indebtedness" expanded the types of assets that qualify as capital. But now USCIS would interpret "indebtedness" to exclude otherwise-qualifying cash based on how the petitioner acquired it. *See Zhang*, 344 F. Supp. 3d at 56 (explaining that USCIS's "interpretation transforms the definition of 'capital' from 'capital means cash' (among other things) to 'capital means cash not obtained from an uncollateralized, third-party loan.'").

Another part of Section 204.6(e) undermines USCIS's decision to treat loan proceeds as indebtedness, not cash. In defining "capital," Section 204.6(e) does make one distinction based on the means of acquisition: it expressly provides that "[a]ssets acquired, directly or indirectly, by unlawful means (such as criminal activities) shall not be considered capital . . . . " 8 C.F.R. § 204.6(e). So if the means of acquisition are unlawful, the assets are not capital under this

statute. First, this unlawfully-acquired-assets provision is significant because it underscores the fact that the regulation makes no distinction based on whether an asset is acquired by a loan. This provision also contradicts USCIS's protestations that Ms. Wang's interpretation of "cash" would prevent USCIS from inquiring into how a petitioner acquired the invested assets. Petitioners must prove the lawful source of their investment funds. *Id.* § 204.6(j)(3). USCIS may investigate how a petitioner acquired the invested assets, as it did here, but it may not now impose additional requirements just because the assets are proceeds from a loan.

USCIS suggests that its interpretation is necessary to ensure that investors comply with the regulation's requirement that Ms. Wang's own capital is placed "at risk." *See* Defs.' Mem. at 18-19. 8 C.F.R. § 204.6(j)(2) requires "evidence that the petitioner has placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk." This "at risk" requirement dictates what the petitioner must do with the "capital," but it says nothing about what counts as "capital." *See Zhang*, 344 F. Supp. 3d at 53.

USCIS's action here conflicts with the language of the regulation, and it is unsupported by the regulation's history and USCIS's own precedential decisions. USCIS's denial, thus, was arbitrary and capricious. The Court will remand Ms. Wang's petition for reconsideration consistent with this Memorandum Opinion. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."); *accord Zhang*, 344 F. Supp. 3d at 66 (remanding to USCIS for reconsideration consistent with its opinion).

## IV.     CONCLUSION

For these reasons, the Plaintiff's Motion for Summary Judgment will be granted in part,[8] and the Defendants' Motion for Summary Judgment will be denied. A separate order will issue.

Dated: January 31, 2019                                                         TREVOR N. McFADDEN, U.S.D.J.

---

[8] Ms. Wang also asserts that the agency's action was (1) an *ultra vires* action that exceeded USCIS's statutory authority; (2) improper without notice and comment; and (3) an impermissible retroactive application of agency policy. She also contends that even under USCIS's erroneous interpretation of its regulation, she should prevail. Because this Court will grant in part Ms. Wang's motion, as discussed above, the Court need not consider these alternative arguments.